GULF, C. & S. F. RY. CO. v. J. A. BOWERS & SON. (No. 8140.)

(Court of Civil Appeals of Texas. Ft. Worth. March 27, 1915.)

1. CARRIERS ⊛228—CARRIAGE OF LIVE STOCK—DELAY IN TRANSPORTATION—SHRINKAGE.

In an action against a common carrier for damages to a shipment of live stock through delay in transportation and rough handling, evidence examined, and *held* to warrant the refusal of a peremptory instruction for defendant and to sustain a verdict for plaintiff based upon the shrinkage in the weight of the cattle when delivered.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 957–960; Dec. Dig. ⊛228.]

2. TRIAL ⊛253 — INSTRUCTIONS — IGNORING EVIDENCE.

In an action for damages to a shipment of live stock through the carrier's delay in transportation, an instruction to find for defendant if the shipment could not have reached its destination in time for the morning market was properly refused, where the evidence showed that the market was open until 3 o'clock p. m. and sometimes as late as 7 p. m.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. ⊛253.]

3. TRIAL ⊛250 — INSTRUCTIONS — APPLICATION TO PLEADINGS AND EVIDENCE.

An instruction eliminating the grounds of recovery and submitting issues not made by the pleadings nor sustained by the evidence is properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 584–586; Dec. Dig. ⊛250.]

Appeal from Tarrant County Court; Chas. T. Prewitt, Judge.

Action by J. A. Bowers & Son against the Gulf, Colorado & Santa Fé Railway Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

Lee & Lomax and W. D. Smith, all of Ft. Worth, and Terry, Cavin & Mills, of Galveston, for appellant. J. A. Templeton, of Ft. Worth, for appellees.

BUCK, J. Suit was filed by J. A. Bowers & Son against appellant for damages alleged to have been sustained in the shipment of two car loads of cattle, consisting of 57 cows, 4 bulls, and 4 steers, shipped from Caldwell, Tex., to Ft. Worth, Tex., on December 3, 1912. Recovery was sought by reason of alleged delays in transportation and rough handling causing alleged shrinkage in weights of the cattle and depreciation in market value. From a judgment for plaintiffs in the sum prayed for, to wit, $140.40, the defendant railway company appeals.

The evidence showed that the cattle were loaded on the cars at about 2 o'clock p. m. December 3d, and left Caldwell at 4 o'clock p. m., one car reaching North Ft. Worth at 3:40 p. m. December 4th, and the other at 12:50 a. m. December 5th. The shippers did not accompany the shipment, either in person or by agent. The distance from point of origin to destination is 191 miles. The scheduled time for such run by through freight trains is 18 hours and 5 minutes, but various witnesses testified that it ordinarily takes about 14 or 15 hours to make the trip. The two plaintiffs testified that they have made such trip in 10 hours, but that ordinarily it takes 14 or 15 hours. The shipment arrived at Ft. Worth in different cars from those in which they were loaded. Therefore it might be said that the evidence showed conclusively that the cattle had been unloaded en route. These cattle had been fed on hulls and meal for 90 days, 30 days of which feeding was prior to the purchase of the cattle by plaintiffs. The 65 head weighed 51,450 pounds, and sold at prices ranging from $3.50 to $4.70 per hundredweight.

[1] In its first and second assignments appellant complains: First, because of the refusal of the court to give to the jury the peremptory instruction asked by defendant; and, second, because it is alleged that the verdict of the jury is without evidence to support it, and is therefore contrary to the law, in this, that the great weight and preponderance of the evidence shows that the question of how much the cattle will shrink in transportation and how much they will shrink by being delayed and arriving at the market late is largely a matter of speculation and guesswork; that it depends on several things, to wit, weather conditions, time cattle were unloaded at the market, manner of feeding the cattle, and the fill they were allowed to take just before they were loaded

on the cars for transportation, etc. It is further urged in said second assignment that there is no testimony in this case as to the various conditions which effected the shrinkage in the cattle.

In discussing these two assignments it may be well to note that the testimony tended to establish: (1) That ordinarily cattle will lose somewhat in weight and in depreciation in market value by reason, of shipment even when handled with due care and transported with due dispatch; and (2) that they will lose more in shrinkage by reason of the first day's shipment than for subsequent days, and that the loss in shrinkage and in depreciation from delays will decrease for each day after the first 24 hours. If 15 hours be taken as the ordinary time required for the trip, then the first shipment reaching ·Ft. Worth was 8 hours and 40 minutes beyond the usual and customary time in making the run, and the second car 17 hours and 5 minutes, from the time the two cars actually left Caldwell to the time they were placed for unloading at the stockyards. If they had made the run in the usual time, the two cars would have reached Ft. Worth not later than 7 a. m. December 4th, which would have given time for the cattle to receive their fill and be ready for the market the morning of the 4th. The evidence tends to show that the market for cattle at the Ft. Worth Stockyards ordinarily closes about 3 o'clock p. m., but that sometimes buying and selling continue until as late as 7 o'clock p. m. The testimony of the two plaintiffs, C. L. Brown, salesman for the commission company who sold these cattle, and other witnesses, tends to show that a 24 hours' delay in shipment will cause a depreciation in the market value of cattle of about 10 cents per hundredweight and a shrinkage in weight of from 20 to 50 pounds per head. There does not seem to be any controversy as to the character and kind of cattle shipped, as to upon what they had been fed for the 90 days last prior to the shipment, and there is no intimation in the record that weather conditions, either· at the time of loading or unloading, were unfavorable. The testimony of men who have been engaged for many years in the buying and selling and handling of live stock, and the shipment thereof, as to the effect upon cattle of delays in shipment, is not mere speculation and guesswork, but its reliability depends largely on the experience and fairness of such witnesses, though of course their judgment as to the extent of shrinkage or depreciation is not reducible to anything like a mathematical certainty. Nor does any witness in this record, so far as we have been able to determine, purport to testify as to the exact amount of shrinkage or depreciation that would take place under a given condition or set of circumstances. If the testimony of the witnesses for the plaintiffs up-

on these matters is to be relied on—and we see no reason why it is not credible—we think the plaintiffs have established a depreciation in market value not to exceed 10 cents per hundredweight, or $51.45, and a loss resulting from shrinkage of from 20 to 50 pounds per head. The average price at which these cattle were sold was $4.10 per hundredweight; the average price per head was $34.40. By subtracting $51.45, the amount of recovery admissible under the testimony for depreciation in market value of the cattle as sold, from $140.40, the amount of the recovery, we have $88.95, which gives a recovery of $1.36 per head for such shrinkage, which allows only some 33 or 34 pounds per head for shrinkage, and we think the evidence amply sustains this amount. Therefore we overrule appellant's first and second assignments of error, and also the third, which raises in another form the same question.

[2, 3] In its fourth assignment appellant complains because the court failed to give its special charge No. 6, which reads:

"Gentlemen of the jury, you are charged in this case as follows: The defendant could not be required under the law to move plaintiffs' cattle from Caldwell to Ft. Worth within any particular time, or for any particular market, but could only be required to use ordinary diligence and care to transport the cattle from Caldwell to Ft. Worth within a reasonable time. If you find, therefore, and believe from the testimony in' this case, that the plaintiffs' cattle could not in any event have reached Ft. Worth in time for the market on the morning of December 4, 1912, then you will find for the defendant in this case and so say by your verdict."

We do not think that defendant was entitled to this charge. The charge in question was erroneous in that it instructed a verdict for defendant if the jury should find that the cattle could not have reached Ft. Worth in time for the morning market of December 4th, when the evidence shows that the market at Ft. Worth was open generally until 3 o'clock p. m. and sometimes as late as 7 p. m., as heretofore stated. Moreover, it eliminates the questions of whether or not the cattle were depreciated in market value and were shrunken in weight, which were the two grounds for plaintiffs' recovery, and submits an issue not made by the pleadings, nor sustained by the evidence, to wit, the question of whether or not by reason of said delay plaintiffs lost the benefit of the market of the morning of December 4th. There is nothing in the record to show that there was any difference in the markets of December 4th and December 5th. The fourth assignment is overruled.

We do not think that the charge contained in the fifth paragraph of the court's main charge is subject to the criticisms of being on the weight of the evidence, and hence we overrule appellant's fifth assignment of error.

Finding no reversible error, the judgment of the trial court is affirmed.